# Newman Fitch Altheim Myers, P.C.

ROBERT A. FITCH
JAN KEVIN MYERS
CHARLES W. KREINES
OLIVIA M. GROSS
IAN F. HARRIS
STEPHEN N. SHAPIRO
CHARLES DEWEY COLE, JR***
DEREK E. BARRETT*
———————
ANDRE N. POULIS
MICHAEL H. ZHU
———————
RICHARD L. NEWMAN   (1921-2006)
ABRAHAM S. ALTHEIM   (1954-2005)

ATTORNEYS AT LAW

14 Wall Street
New York, NY 10005-2101
(212) 619-4350
FAX: (212) 619-3622
www.nfam.com

Newman Fitch Altheim Myers
A Partnership Affiliated with Newman Fitch Altheim Myers, P.C.
744 Broad Street
Newark, New Jersey 07102
(973) 824-2600
FAX: (973) 824-2993

ABRAHAM A. FRIEDMAN
JANINE SILVER
THOMAS J. CHAVES
PAUL V. GILBERTO
MARTIN I NAGEL
THOMAS P. RYAN, JR
MATTHEW S. MARINO**
LON V. HUGHES
STEPHEN M. BIGHAM
ANTHONY D. LUIS
DAVID P. TURCHI
DANIEL A. ALTER
HOWARD B. ALTMAN
AMARA S. FAULKNER
LUIS G. SABILLON*
ADRIENNE YARON
LAURA J. PROCIDA *
JENNIFER A. LEE*
———————
*    ALSO ADMITTED IN NJ
**   ALSO ADMITTED IN CA
***  ALSO ADMITTED IN NJ, DC & TX

January 29, 2008

**VIA ECF**

Honorable Frank Maas
Room 740
Daniel Patrick Moynihan
  United States Courthouse
500 Pearl Street
New York, NY 10007

Re:    **Chatie Graham v. J.B. Hunt Transport, et. al.**
       **07-CV-11446 (RMB)(FM)**
       **Our Ref: NJBH 16388**

Dear Judge Maas:

We are the attorneys for defendants J.B. Hunt Transport and James B. Tabor, and we write to ask that the court find that this case was properly removed to federal court. This court has jurisdiction over this matter under the diversity-of-citizenship statute. U.S.C. §§ 1332(a), 1441(a). Not only are the parties diverse, but there is a reasonable probability that the amount in controversy exceeds $75,000.

The plaintiff filed a complaint alleging "severe and permanent personal injuries" as a result of a motor-vehicle accident involving the defendants' tractor trailer. *See* **Exhibit A** (notice of removal and complaint) at ¶ 23. Pursuant to New York's no fault law, the plaintiff claims (1) "serious injury" and (2) economic loss in excess of basic economic loss. *Id.* at ¶ 25. Finally, the plaintiff claims property damage in the amount of $25,000.

On December 20, 2007, the defendants removed this action to the United States District Court for the Southern District of New York under its diversity-of-citizenship jurisdiction. *See* **Exhibit A**. In the notice of removal, the defendants set forth that plaintiff is a citizen of the State of New York, that J.B. Hunt Transport, Inc. is a corporation incorporated in the State of Georgia, with its principal place of business in the State of Arkansas, and that James B. Tabor, the employee driver of the tractor-trailer, is a citizen of the Commonwealth of Kentucky. *Id.* at ¶¶ 2-3. The defendants alleged that the plaintiff claimed damages in excess of

Newman Fitch Altheim Myers, P.C.

$75,000. *Id.* at ¶ 4. At the initial pretrial conference held January 11, 2008, Judge Richard M. Berman directed all parties to submit letter briefs as to whether diversity-of-citizenship jurisdiction existed, and on January 29, 2008, all parties consented to determination of the issue by the Magistrate Judge. *See* **Exhibit B**.

The burden of establishing that jurisdiction exists lies with the removing defendant. *See Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2nd Cir. 2000). Plaintiff's complaint sets forth $25,000 in property damage but is silent as to the damages sought for personal injuries. This is because the Civil Practice Law and Rules section 3017(c) forbids the inclusion of an *ad damnum* clause in a personal injury case like this one. When the complaint does not specify an amount in controversy, the court looks to the notice of removal itself to see if the jurisdictional amount is alleged. *See Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). The notice of removal in this case alleges in paragraph 4, "[t]he plaintiff seeks damages of more than $75,000 and sought damages of more than $75,000 when this action was started in state court." **Exhibit A**, notice of removal at ¶ 4.

That allegation of the amount in controversy is facially adequate because it is both "a short and plain statement of the grounds upon which the court's jurisdiction depends," *cf.* Fed R. Civ. P. 8(a), and patterned on Official Form 2(a), which is "sufficient under the rules and [is] intended to indicate the simplicity and brevity of statement that the rules contemplate," Fed. R. Civ. P. 84. Because the notice of removal is "signed pursuant to Rule 11 of the Federal Rules of Civil Procedure," 28 U.S.C. § 1446(a), the court is assured that the amount-in-controversy allegation is warranted by existing law and is supported. *See* Fed. R. Civ. P. 11(b).

Were the court to look behind the complaint and see if the amount in controversy exceeds $75,000, it should engage in fact-finding and receive evidence to establish whether jurisdiction exists. A good example of this practice exists in *Williams v. Best Buy*. There, the plaintiff sued to recover for a trip and fall at one of the defendant's stores. 269 F.3d at 1318. The plaintiff brought suit in state court, and the defendant removed the matter to federal court. *Id.* On appeal, the Eleventh Circuit *sua sponte* found that the record below failed to establish the amount in controversy sufficient to warrant subject-matter jurisdiction. *Id.* Rather than dismissing the matter outright, the Eleventh Circuit held that "[b]ecause Best Buy's notice of removal clearly asserted that the jurisdictional amount was satisfied, Best Buy should be afforded an opportunity to submit evidence in support of its assertion." *Id.* at 1321.

In deciding that the defendant was entitled to submit evidence in support of its allegations that over $75,000 was in controversy, the *Williams* court relied on the Second Circuit case of *United Food & Commercial Workers Union v. Centermark Properties Meridian*, 30 F.3d 298 (2nd Cir. 1994), which stated that where a removing defendant alleges diversity jurisdiction, it has the right to prove the amount in controversy by submitting evidence:

> Facing a similar situation, the Second Circuit held that the proper course of action under such circumstances is to remand the case to the district court for factual finds on the amount in controversy. The *United Food* court reasoned that, had the plaintiff challenged the amount in controversy by filing a motion to remand in the district court, 'the parties, under the direction of the district court,

NEWMAN FITCH ALTHEIM MYERS, P.C.

> would have had an opportunity to supplement the record to allow
> for an informed decision on the issue.' Therefore, the Second
> Circuit found it 'only fair ... that the issue be remanded to the
> district court to allow the parties to submit evidence on the amount
> in controversy and to give defendants an opportunity to meet their
> burden as to this requirement of diversity jurisdiction.

*Williams*, 269 F.3d at 1320-21, *citing to United Food*, 30 F.3d at 306.  In *United Food*, the court determined that "this record contains no supplementary submissions or estimates of what costs were incurred," and therefore found that a fact-finding, based on evidentiary submissions, was necessary.  30 F.3d at 306.  Likewise in *Mehlenbacher*, the Second Circuit remanded a case to the district court for a factual determination as to the amount in controversy:  "[b]ecause, on this record, we are unable to determine whether any or all of the plaintiffs met the required $50,000 amount in controversy, we must remand to the district court to give Akzo an opportunity to make that showing."  216 F.3d 291 at 298.[1]

In proving the amount in controversy, the removing defendant is not charged with demonstrating that plaintiff must be able to recover $75,000, but rather, defendant is only required to establish a reasonable probability that plaintiff can recover over $75,000.  *See Frederico v. Home Depot*, 507 F.3d 188, 195, 197 (3rd Cir. 2007)("[A] case must be dismissed or remanded if it appears to a legal certainty that the plaintiff *cannot* recover more than the jurisdictional amount of $75,000.  The rule does not require the removing defendant to prove to a legal certainty the plaintiff can recover $75,000—a substantially different standard"), *citing to St. Paul Mercury Indemnity Co. v. Red Cab Co.*["*Red Cab*"], 303 U.S. 283, 58 S. Ct. 586, 82 L. Ed. 845 (1938), *Samuel-Bassett v. Kia Motors America*, 357 F.3d 392, 397-98 (3rd Cir. 2004), *Juarbe v. K-Mart Corp.*, 2005 WL 1994010, *1 (S.D.N.Y. 2005), *Raspa v. Home Depot*, 2007 WL 4569887, *6 (D.N.J. 2007); *cf. Scherer v. The Equitable Life Ass. Soc. of the U.S.*, 347 F.3d 394, 397 (2nd Cir. 2003).

Moreover, it is generally accepted that multiple claims by the same plaintiff arising out of the same transaction can be viewed collectively in determining whether diversity jurisdiction exists.  *See Allen v. Toyota Motor Sales*, 155 Fed. Appx. 480, 482 (11th Cir. 2005)(reviewing all components of plaintiff's various damage claims to determine whether removing defendant had established the requisite amount in controversy), *Frederico*, 507 F.3d at 198-99 (finding removing defendant had met the amount in controversy requirement by adding together the compensatory damages, punitive damages and attorneys fees).

While no formal hearing has been ordered in this case, defendants hereby respectfully submit plaintiff's medical records documenting her injuries. *See* **Exhibit C**.  Plaintiff's medical injuries allegedly attributable to the accident include a partial tear of the rotator cuff tendon, an arthroscopic surgery conducted on or about March 28, 2007, and three bulging cervical discs.  Such injuries are frequently the subject of verdicts in excess of $75,000

---

[1] Mehlenbacher also distinguished *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269 (2nd Cir. 1994).  There, the removal notice had improperly asserted federal question jurisdiction, and did not address diversity until plaintiff's appeal, which had occurred when the litigation was in its 3rd year.  There, the court summarily remanded the case to state court.  Like *Mehlenbacher*, this matter is new, and diversity is the only basis for the removal.  Hence *Lupo* is distinguishable and *Mehlenbacher* controls.

NEWMAN FITCH ALTHEIM MYERS, P.C.

in New York.  *See Guillory v. Nautilus Real Estate, Inc.*, 208 A.D.2d 336, 624 N.Y.S.2d 110 (1st Dept. 1995)($1,200,000), *Bernstein v. Red Apple Supermarkets*, 227 A.D.2d 264 (1st Dept. 1996)($1,100,000), *Klimowich v. State of New York*, Claim No. 99495, Filed 10/10/02 (Ct. Claims New York)($200,450).  Indeed, considering the plaintiff's claims of (1) severe and permanent personal injuries, (2) "severe injury" under the no fault law,[2] (3) economic damages in excess of basic economic loss,[3] *and* (4) property damage in the amount of $25,000, it is respectfully submitted that the amount in controversy unequivocally exceeds $75,000.  Indeed, plaintiff's demand at the pretrial conference (~$185,000) was well in excess of $75,000.

        Therefore, we respectfully ask this Court to find that the amount in controversy exceeds $75,000 and that diversity jurisdiction exists in this matter.

        Respectfully,

        NEWMAN FITCH ALTHEIM MYERS

        /s

        Robert A. Fitch

RAF/DPT

cc:    **Via Fax (212-962-5050) and Regular Mail**
        MARK E. SEITELMAN LAW OFFICES, P.C.
        Attorneys for the Plaintiff
        111 Broadway, 9th Floor
        New York, New York 10006
        (212) 962-2626

        **VIA ECF**
        United States District Court
        Southern District

---

[2] Section 5102(d) of the New York State Insurance Law sets forth that "'[s]erious injury' means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

[3] Section 5102(a) of the Insurance Law sets forth that basic economic loss is $50,000.  *See also Johnson-Kamara v. W. Chacon Trucking*, 2006 WL 336041, *2 (S.D.N.Y. 2006)(relying on plaintiff's claim that damages exceeded basic economic loss under New York's no fault law in the determination of whether or not defendant had demonstrated the amount in controversy).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHATIE GRAHAM,

                         Plaintiff,

       -against-

J.B. HUNT TRANSPORT, INC., and
JAMES B. TABOR,

                         Defendants.
------------------------------------------------------------------X

### NOTICE OF REMOVAL

        The defendants J.B. Hunt Transport, Inc. and James B. Tabor, removes this action from the Supreme Court, Orange County to the United States District Court for the Southern District of New York.

        1.      The plaintiff commenced this action against J.B. Hunt Transport, Inc., and James B. Tabor in the Supreme Court of the State of New York, Orange County.  A copy of the complaint is attached as **Exhibit A.**

        2.      The plaintiff, Chatie Graham, is a citizen of the State of New York and was a citizen of the State of New York when this action was started in state court.

        3.      The defendants are citizens of states other than the State of New York and were citizens of states other than the State of New York when this action was started in state court.

        a)  J.B. Hunt Transport, Inc. is (and was) a corporation incorporated in the State of Georgia with its principal place of business in the State of Arkansas.

        b)  James B. Tabor (and was) a citizen of the State of Kentucky.

        4.      The plaintiff seeks damages of more than $75,000 and sought damages of more than $75,000 when this action was started in state court.

5.    This court has subject-matter jurisdiction over this action under section 1332(a)(1) of the Judicial Code, 28 U.S.C. § 1332(a)(1), because this action—both now and when it was started—is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.    The defendants may, under section 1441(a) of the Judicial Code, 28 U.S.C. § 1441(a), remove this action to this court because this is a civil action of which the district courts of the United States have original jurisdiction that is brought in a state court

7.    All defendants join in the removal of this action to this court.

Dated:  New York, New York
        December 20, 2007

_____
Robert A. Fitch. (RF2198)
Newman Fitch Altheim Myers, P.C.
Attorneys for Defendant
J.B. Hunt Transport, Inc.
14 Wall Street
New York, New York 10005-2101
(212) 619-4350
JBH 16388

To:    MARK E. SEITELMAN LAW OFFICES, P.C.
       Attorneys for Plaintiff
       111 Broadway, 9th Floor
       New York, New York 10006
       (212) 962-2626

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
-----------------------------------------X
CHATIE GRAHAM,

                            Plaintiff,

            -against-

J.B. HUNT TRANSPORT, INC. and JAMES
B. TABOR,

                            Defendants.
-----------------------------------------X

Index No.:
Date Purchased: 11/8/07

**SUMMONS** 2007 - 10872

Plaintiffs designate
Orange County as the
place of trial.

The basis of venue
is: residence of
plaintiff

Plaintiffs reside
at:
22 Edgewood Terrace
Newburgh, NY 12550
County of Orange

**To the above named Defendants:**

    You are hereby summoned to answer the complaint in this
action, and to serve a copy of your answer, or, if the complaint
is not served with this summons, to serve a notice of appearance
on the Plaintiff's attorney(s) within twenty days after the
service of this summons, exclusive of the day of service, where
service is made by delivery upon you personally within the state,
or, within 30 days after completion of service where service is
made in any other manner. In case of your failure to appear or
answer, judgment will be taken against you by default for the
relief demanded in the complaint.

Dated:    New York, New York
          October 29, 2007

                                    _____
                                    MARK E. SEITELMAN LAW OFFICES, P.C.
                                    Attorneys for Plaintiff(s)
                                    111 Broadway, 9th Floor
                                    New York, New York 10006
                                    (212) 962-2626

TO:

J.B. HUNT TRANSPORT, INC.
4100 South Council
Oklahoma City, OK 73179

JAMES B. TABOR
106 E. Main St.
Bradfordsville, KY 40009

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
CHATIE GRAHAM,

                            Plaintiff,

           -against-                              VERIFIED COMPLAINT

J.B. HUNT TRANSPORT, INC. and JAMES               2007- 10872
B. TABOR,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

       Plaintiff, by her attorneys, MARK E. SEITELMAN LAW OFFICES,

P.C., complaining of the Defendants, respectfully alleges, upon

information and belief:

                  AS AND FOR A FIRST CAUSE OF ACTION

       1.    At all times herein mentioned, Plaintiff was, and still

are, a resident of the County of Orange, State of New York,

residing at 22 Edgewood Terrace, floor 1, Newburgh, New York 12550.

       2.    That at all times herein mentioned, the Defendant J.B.

HUNT  TRANSPORT,  INC.  was  and  still  is  a  foreign  business

corporation duly authorized to do business in the State of New

York.

       3.    That at all times herein mentioned, the Defendant J.B.

HUNT TRANSPORT, INC., maintained an address at P.O. Box 130, 615

J.B. Hunt Corporate Drive, Lowell, Arkansas, 72745.

       4.    At all times herein mentioned, Defendant JAMES B. TABOR

resided at 106 East Main Street, Bradfordsville, Kentucky 40009.

       5.    At all times herein mentioned, Defendant JAMES B. TABOR

was  a  servant,  agent  and/or  employee  of  defendant  J.B.  HUNT

TRANSPORT, INC.

       6.    At  all  times  herein  mentioned,  Defendant  J.B.  HUNT

TRANSPORT, INC. was the owner of a motor vehicle with Oklahoma license plate number 2FW778.

7. At all times herein mentioned, Defendant JAMES B. TABOR operated the aforementioned motor vehicle.

8. At all times herein mentioned, Defendant JAMES B. TABOR operated the motor vehicle with the permission and consent of Defendant J.B. HUNT TRANSPORT, INC.

9. At all times herein mentioned, Defendant JAMES B. TABOR operated the aforementioned motor vehicle in the scope of his employment with Defendant J.B. HUNT TRANSPORT, INC.

10. At all times herein mentioned, Defendant JAMES B. TABOR operated the aforementioned motor vehicle in furtherance of the business of Defendant J.B. HUNT TRANSPORT, INC.

11. At all times herein mentioned, Defendant J.B. HUNT TRANSPORT, INC. managed the aforesaid motor vehicle.

12. At all times herein mentioned, Defendant JAMES B. TABOR managed the aforesaid motor vehicle.

13. At all times herein mentioned, Defendant J.B. HUNT TRANSPORT, INC. maintained the aforesaid motor vehicle.

14. At all times herein mentioned, Defendant JAMES B. TABOR maintained the aforesaid motor vehicle.

15. At all times herein mentioned, Plaintiff was the operator of a motor vehicle with New York State license plate number CZL2565.

16. At all times herein mentioned, I-84 West, near Exit 8,

2

Newburgh, New York, was a public roadway, street and/or thoroughfare.

17.    On August 25, 2006, Defendant JAMES B. TABOR was operating the vehicle owned by J.B. HUNT TRANSPORT, INC. at the aforementioned location.

18.    On August 25, 2006, Plaintiff was operating her motor vehicle at the aforementioned location.

19.    On August 25, 2006, at the aforementioned location, the motor vehicle owned by Defendant J.B. HUNT TRANSPORT, INC. and operated by Defendant JAMES B. TABOR came into contact with the motor vehicle owned and operated by Plaintiff.

20.    That as a result of the aforesaid contact, Plaintiff was injured.

21.    The aforesaid occurrence was caused wholly and solely by reason of the negligence of the Defendants without any fault or negligence on the part of the Plaintiff contributing thereto.

22.    Defendants were negligent, careless and reckless in the ownership, operation, management, maintenance, supervision, use and control of the aforesaid vehicle and the Defendants were otherwise negligent, careless, reckless and grossly negligent under the circumstances then and there prevailing.

23.    That by reason of the foregoing, Plaintiff sustained severe and permanent personal injuries; and Plaintiff was otherwise damaged.

24.    Plaintiff sustained serious injuries as defined by

*3*

Section 5102 (d) of the Insurance Law of the of the State of New York.

25. Plaintiff sustained serious injuries and economic loss greater than basic economic loss as defined by Section 5104 of the Insurance Law of the State of New York.

26. Plaintiff is not seeking to recover any damages for which Plaintiff has been reimbursed by no-fault insurance and/or for which no-fault insurance is obligated to reimburse Plaintiff. Plaintiff is seeking to recover only those damages not recoverable through no-fault insurance under the facts and circumstances in this action.

27. This action falls within one or more of the exceptions set forth in CPLR Section 1602.

28. That by reason of the foregoing, Plaintiff has been damaged in sum which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

### AS AND FOR A SECOND CAUSE OF ACTION

29. Plaintiff repeats, reiterates and realleges each and every allegation contained in the First Cause of Action with the same force and effect as though set forth herein at length.

30. On August 25, 2006, plaintiff owned the aforesaid motor vehicle bearing New York License plate number CZL2565.

31. As a result of defendants' negligence, plaintiff sustained property damage to said motor vehicle.

32. As a result, plaintiff has been damaged in the amount of

*4*

TWENTY FIVE THOUSAND ($25,000.00) DOLLARS.

WHEREFORE, plaintiff demands judgment in her favor against defendants, and each of them, on the First Cause of Action in an amount to be determined at trial, and which is in excess of the jurisdictional limits of all lower Courts which would otherwise have jurisdiction, on the Second Cause of Action in the amount of TWENTY FIVE THOUSAND ($25,000.00) DOLLARS, plus an award of interest, costs and disbursements.

Dated:     New York, New York
           October 29, 2007


                              Yours, etc.,

                              MARK E. SEITELMAN, ESQ.
                              MARK E. SEITELMAN LAW OFFICES, P.C.
                              Attorneys for Plaintiff
                              111 Broadway, 9th Floor
                              New York, NY 10006
                              (212) 962-2626

                              Our File No. 06-0376

5

ATTORNEY'S VERIFICATION

MARK E. SEITELMAN, an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

I am the principal of MARK E. SEITELMAN LAW OFFICES, P.C., attorneys of record for plaintiff. I have read the annexed Complaint and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files.

The reason this verification is made by me and not plaintiff is that plaintiff is not presently in the county wherein the attorneys for the plaintiff maintain their offices.

Dated:    New York, New York
          October 29, 2007

_____
MARK E. SEITELMAN

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
CHATIE GRAHAM,

                                        Plaintiff,              **RULE 7.1 STATEMENT**

               -against-

J.B. HUNT TRANSPORT, INC., and
JAMES B. TABOR,
                                        Defendants.
---------------------------------------------------------------------------X

        ROBERT A. FITCH, a partner with the firm of NEWMAN FITCH ALTHEIM

MYERS, P.C., attorney for the defendant, J.B. HUNT TRANSPORT, INC., and JAMES B.

TABOR having an initial pleading in the above captioned matter, makes the following disclosure

to the Court pursuant to Local General Rule 7.1 of the Local Rules for the Southern and Eastern

Districts of New York:

        The only parties who the undersigned knows to have any interest in the outcome

of the action on behalf of the removing defendant, other than the removing defendant, are the

following:

        J. B.Hunt Transport Services, Inc.
        J. B. Hunt Transport, Inc.
        J. B. Hunt Corporation
        L.A., Inc.

Dated: New York, New York
       December 20, 2007
                       **NEWMAN FITCH ALTHEIM MYERS, P.C.**

                       _____
                       By:  **ROBERT A. FITCH  (RF2198)**
                       Attorneys for Defendants
                       J.B. HUNT TRANSPORT, INC,
                       14 Wall Street
                       New York, New York 10005-2101
                       (212) 619-4350

To:     MARK E. SEITELMAN LAW OFFICES, P.C.
        Attorneys for Plaintiff
        111 Broadway, 9th Floor
        New York, New York 10006
        (212) 962-2626

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

CHATIE GRAHAM,                                          CV 07-11446 (RMB/FM)

                      Plaintiff,

        -against-                                    **CONSENT TO EXERCISE OF
JURISDICTION BY A UNITED
STATES MAGISTRATE JUDGE
OVER DISPOSITIVE MOTIONS
DESCRIBED UNDER 28 U.S.C.
§636(b)(1)(B)**

J.B. HUNT TRANSPORT, INC., and
JAMES B. TABOR,

                      Defendants.

------------------------------------------------------------------------X

### CONSENT TO EXERCISE OF JURISDICTION

In accordance with the provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the

parties in this case consent to have a United States magistrate judge conduct any and all

proceedings and enter a final order as to each motion identified below.

**MOTIONS:** *Sua sponte* Motion to Remand the Case to State Court

| | Party Represented | Signatures | Date |
|---|---|---|---|
| 1. | Chatie Graham | *[signature]* | 1/30/08 |
| 2. | J.B. Hunt Transport Inc. | *[signature]* | 1/29/08 |
| 3. | James Tabor | *[signature]* | 1/29/08 |

### ORDER OF REFERENCE

IT IS ORDERED that the above motion be referred to Judge Frank Maas, United States
Magistrate Judge, to conduct all proceedings and enter a final order on such motion in
accordance with 28 U.S.C.§636(c) and Fed.R.Civ.P.73.

_____                    _____
      Date                                     Hon. Richard M. Berman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X

GRAHAM

            Plaintiff(s),

       - v -

J.B. HUNT TRANSPORT

            Defendant(s).

------------------------------------------------X

**Case Management Plan**

07 CV. 11446 (RMB)

      The following Case Management Plan is entered after consultation with the parties. This Plan is also a Rule 16 and Rule 26(f) scheduling order as required by the Federal Rules of Civil Procedure.

(i)    Joinder of additional parties by _____ 4/11/08

(ii)   Amend the pleadings by _____ 2/1/08 with briefs w/jurisd

(iii)  All discovery to be expeditiously completed by _____ 5/12/08 FACT+ Expert

(iv)  Consent to Proceed before Magistrate Judge ____ NO

(v)   Status of settlement discussions _____ with Principals ON 5/19/08 @ 10:00 A.M.

Sections vi through xi will be set at conference with the Court.

(vi)  Motions 4/4/08 — Tel. Conf.

(vii) Oral Argument _____ 5/21/08

(viii) Joint Pre-Trial Order to be submitted by _____ 2:00

(ix)  Final Pre-Trial Conference _____

(x)   Trial _____

(xi)  Other Referred to Magistrate Judge for General Pretrial + possible trial pending 636(c) consent

**SO ORDERED:** New York, New York

      1/11/07

RMB

Hon. Richard M. Berman, U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/11/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CHATIE GRAHAM,                              :

                              Plaintiff,     :          **ORDER**

          -against-                          :          07 Civ. 11446 (RMB)(FM)

J.B. HUNT TRANSPORT, INC., and              :
JAMES B. TABOR,
                                            :
                              Defendants.

                                            :

------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

          Pursuant to a telephone conference held earlier today, it is hereby

ORDERED that:

          1.      A further telephone conference shall be held on April 4, 2008, at
                  10:00 a.m. Defendants' counsel is directed to initiate the call by
                  dialing Chambers at (212) 805-6727.

          2.      A settlement conference shall be held on May 21, 2008 at 2:00 p.m.
                  in Courtroom 20A, 500 Pearl Street, New York, New York.

          SO ORDERED.

Dated:    New York, New York
          January 24, 2008

                                                    FRANK MAAS
                                                    United States Magistrate Judge

Copies to:

Honorable Richard M. Berman
United States District Judge

Mirsade Bajraktarevic, Esq.
Mark E. Seitelman Law Offices, P.C.
Fax: (212) 962-5050

Robert A. Fitch, Esq.
Newman, Fitch, Altheim, Myers, P.C.
Fax: (212) 619-3622



St. LUKE'S CORNWALL
HOSPITAL

### Certification of Medical Record

I,  Angelica D. Rios  do certify that I am the  Lead HIM Specialist  of the Department of Health Information at The St. Luke's Cornwall Hospital and that the medical record hereto annexed is a true and complete copy of the hospital record of the admission, treatment and discharge of

Patient Name: _____ Chatie Graham _____

DOB: _____ 9|2|1964 _____

Date(s) of Service: _____ 8|25|06 ER _____

and of the conditions, acts, transactions, occurrences and/or events of said patient's confinement in said Hospital and that the entries were made in the regular course of business of said Hospital and that it was in the regular course of such business to make said entries at the time of the conditions, acts, transactions, occurrences, and/or events or within a reasonable time thereafter.

Signature: _____ Angelica Rios _____

Date: _____ 10|13|06 _____

| E<br>R | Med Rec #<br>L742524 | | ST. LUKE'S CORNWALL HOSPITAL<br>Newburgh Campus | | EMERGENCY<br>RECORD | | Pt.Acct #<br>H00436452 |
|---|---|---|---|---|---|---|---|

| P<br>A<br>T<br>I<br>E<br>N<br>T | Patient Name & Address<br>GRAHAM,CHATIE<br>22 EDGEWOOD TERRACE<br>NEWBURGH NY 12550<br>(845)561-0293 | | Cnty<br>ORAN | | Employer Name & Address<br>VOLUNTEERS OF AMERICA<br>1 GRAY COURT<br>CHESTER,NY<br>(914)469-0724 | | Soc Sec #<br>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 |

Birth-Dt   Age  Sex  M/S  Race  Relgn    Reg/Loc  Fin-Cl   Adm-Sce   Regist    Reg-Date Time  Means of Arrival
09/02/64    41    F    M   AAM   BAP      ER /L.E   HMO      HVA       REG.MFS   08/25/06 2348  AUTOMOBILE
Emergency-Notify                          Reln     Home-Phone         Work-Phone
GRAHAM KENNETH                            SPSE     (845)561-0293

| G<br>U<br>A<br>R | Guarantor Name & Address<br>GRAHAM,CHATIE<br>22 EDGEWOOD TERRACE<br>NEWBURGH NY 12550<br>(845)561-0293 | Reln<br>SP<br><br>Soc Sec #<br>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 | Guarantor Employer Name & Address<br>VOLUNTEERS OF AMERICA<br>1 GRAY COURT<br>CHESTER,NY<br>(914)469-0724 |

| I<br>N<br>S<br>U<br>R | Insurance Name    Policy Number<br>OXFORD HEALTH PLAN   800487302<br>**PA USE ONLY** CARE 800487301<br>SELF PAY NO FAULT | Insured's Name<br>GRAHAM.CHATIE<br>GRAHAM.CHATIE<br>GRAHAM.CHATIE | Reln Group Numb<br>SP<br><br>SP | V<br>I<br>T<br>A<br>L | TEMP: 98 7<br>PUL: 88<br>RESP: 20<br>B/P: 140/89<br>SAO2%: 99 |

| Disposition: Disch Time:    Admit to: Rm    Bed | DX: | |
|---|---|---|
| E/R Physician Signature<br>NADELL ALAN | Primary Care Physician<br>PROFETA GEORGE | Consult Physician |

```
ER - Triage Documentation SLH                    08/25/06 2312 TOC
```

Triage Time: 2312        *****EMERGENCY ROOM TRIAGE RECORD*****
Mode of arrival: Town of Newburgh Ambul
        Temp: 98.7   Pulse: 88      Resp: 20                        BP: 140/89
    Src:          Rhythm:      *Pattern:              SAO2%: 99
                                                      RA/O2: RA
 *Triage B(ENTER A,B,C) (D FOR LAMS)        PMD:                    LPM:
    CC/HX: PT INVOLVED IN A MVC HIT FROM BEHIND PT CAR WAS MOVING FORWARD PT DENIS
        LOC SEATBELT USE REPORTED FROM PT AMBULTORY AT SCENE PT C/O BILAT ARM
        PAIN NECK AND SHOULDER PAIN. PT ALSO C/O HEADACH./.TC
            *Pain Scale: 10
*Non Verbal observations:

        If Pregnant: G:    Pt:    T:    A:    L:    LMP:        EDD:

            Wks:        FHR:        FHR Mode:
        Prenatal Care:
            Comments:

Requesting Mental Health Services?

Prior Medical History: HTN                *Difficult Airway Identified:

  Surg Hist/Past Hosp:

ALLERGIES/REACTIONS *: DENIED                HT:ft:        WT: 204    LBs
                                                in:        kg: 92.533
    Immunization Status:                        cm:
        Lead Testing:        (AGE 9MO-6YR)    Tetanus: Y Date: UTD
    Head Circumference:                      Last menstruation:
Sickle Cell Screening:
        *Recent Mammogram (within 2 years)   Not able to ask/answer
CURRENT MEDICATIONS: (include Dose, Frequency, Last Dose & Time Taken)
*: BP MEDS

BARRIERS TO LEARNING  Special Learning Needs: None

            Primary Language: ENGLISH

    **Add Stroke Intervention Set for any patients exhibiting symptoms of stroke**
            Cmt:

| Monogram Initials | Name | Nurse Type | | |
|---|---|---|---|---|
| TOC | N.TOC | CRISCI,TONI | RN | |

Age/Sex: 41 F                                              Page: 1 of 1
Unit #: L742524          GRAHAM,CHATIE (PRE ER)      Printed 08/25/06 at 2316
Account#: H00436452            L.ER-              Period ending 08/25/06 at 2316
Admitted:                St. Luke'sCornwall Hospital NUR              TRIAGE

AGENCY NAME- n Of New York

IN NO 5- 7198601

DISPATCH INFORMATION

CALL LOCATION West By Exit 8

LOCATION CODE

MILEAGE
END
BEGIN

| | CALL REC'D | | |
|---|---|---|---|
| | ENROUTE | | |
| | AT SCENE | | |
| | FROM SCENE | | |
| | AT DESTINATION | | |
| | IN SERVICE | | |
| | IN QUARTERS | | |

FIRST NAME                 LAST NAME

ADDRESS Wdd & Hari

APPT/UNIT NUMBER          (PHO)NE

Rt in 4 5 w                    8 L 14 5 4 +4

AGE     D.O.B. MM/DD/YYYY @     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

Physician

O Residence
O Health
O Farm
O Industrial
O Other Work
O Recreational
O Road
O Other

Call Received as
⊗ EMERGENCY
O NON EMERGENCY
O STANDBY

CARE IN PROGRESS ON ARRIVAL?
O None   O Other   O Police/Other First Responder   O Other EMS   O PAD used

O MVA / seat belt used →    O Fall of _____ feet   O DSW   O Machinery
O Stuck by vehicle            O Unarmed assault   O Knife

O Extrication required    Seat belt used?
Reported by  O Yes  O No  O Unknown

Seat Belt Use
O Crew  O Patient
O Police  O Other

CHIEF COMPLAINT   SUBJECTIVE ASSESSMENT

PRESENTING PROBLEM
Fill in circle
O Airway Obstruction
O Respiratory Arrest
O Respiratory Distress
O Cardiac Related (Potential)
O Cardiac Arrest

O Allergic Reaction
O Syncope
O Stroke/CVA
O General Illness/Malaise
O Gastro-Intestinal Distress
O Diabetic Related (Potential)
O Pain

O Unconscious/Unresp.
O Seizure
O Behavioral Disorder
O Substance Abuse (Potential)
O Poisoning (Accidental)

O Shock
O Head Injury
O Spinal Injury
O Fracture/Dislocation
O Amputation

O Major Trauma
O Trauma-Blunt
O Trauma-Penetrating
O Soft Tissue Injury
O Bleeding/Hemorrhage

O OB/GYN
O Burns
Environmental
O Heat
O Cold
O Hazardous Materials
O Obvious Death

O Other

PAST MEDICAL HISTORY
O None
⊗ Allergy to NKA
O Hypertension  O Stroke
O Seizures  O Diabetes
O COPD  O Cardiac
O Other (List)  O Asthma

Current Medications (List)

| TIME | RESP | PULSE | B.P. | LOC | GCS | PUPILS | SKIN | STATUS |
|---|---|---|---|---|---|---|---|---|
| | Rate: 70 | Rate: 90 | 136 | ⊗Alert O Voice O Pain O Unresp. | 15 | Normal Dilated Constricted Sluggish No-Reaction | Unremarkable Cool Warm Moist Dry | Pale Cyanotic Flushed Jaundiced |
| | ⊗Regular O Shallow O Labored | ⊗Regular O Irregular | 70 | | | | | |

OBJECTIVE PHYSICAL ASSESSMENT

COMMENTS

TREATMENT GIVEN   FILL IN CIRCLE

O Moved to ambulance on stretcher/backboard
O Moved to ambulance on stair chair
⊗ Walked to ambulance
O Airway Cleared
O Oral / Nasal Airway
O Esophageal Obturator Airway / Esophageal Gastric Tube Airway (EOA/EGTA)
O EndoTracheal Tube (E/T)
O Oxygen Administered @ _____ L.P.M. Method _____
O Suction Used
O Artificial Ventilation Method
O C.P.R. in progress on arrival by:  O Citizen   O PD/FD/Other First Responder   O Other
O C.P.R. Started @ Time ▶
O EKG Monitored (Attach Tracing) [Rhythm(s)]
O Defibrillation/Cardioversion No, Times      O Manual   O Semi-automatic

O Medication Administered (Use Continuation Form)
O IV Established Fluid _____ Cath Gauge _____
O Mast Inflated @ Time _____
O Bleeding / Hemorrhage Controlled (Method Used: _____)
O Spinal Immobilization Neck and Back
O Limb Immobilized by  O Fixation   O Traction
O (Heat) or (Cold) Applied
O Vomiting Induced @ Time _____ Method _____
O Restraints Applied, Type _____
O Baby Delivered @ Time _____ In County _____
    O Alive  O Stillborn  O Male  O Female
O Transported in Trendelenburg position
O Transported in left lateral recumbent position
⊗ Transported with head elevated
O Other:

Time from Arrest
Until C.P.R. ▶ _____ Minutes

| DISPOSITION (See List) | | DISP. CODE | CONTINUATION FORM USED  YES |
|---|---|---|---|

| CREW | IN CHARGE | DRIVER'S NAME | NAME | NAME |
|---|---|---|---|---|
| | T. Gundolfo | J. Superski | O CFR O EMT O AEMT # | O CFR O EMT O AEMT # |
| | O EMT | | | |

© COPYRIGHT 1996 NEW YORK STATE DEPARTMENT OF HEALTH

DOH-151D (11/96) printed by NYS EMS PROGRAM

**DEPARTMENT OF EMERGENCY MEDICINE**

☐ A ☐ B ☐ C ☐ D

PATIENT NAME _Graham Chatie_

**ST. LUKE'S CORNWALL HOSPITAL**

☐ CORNWALL CAMPUS
☐ NEWBURGH CAMPUS

STREET ADDRESS
CITY & STATE
AGE
MR NO

SERVICE DATE _8/25/06_

ROOM NO

| TIME | LAB / X-RAY ORDERS | Nurse Initial |
|------|--------------------|------|
| | ☐ CBC ☐ SMA7 ☐ SMA13 ☐ AMYLASE ☐ UA ☐ UCG ☐ CPK ☐ Troponin ☐ ABG ☐ EKG | |
| | ☐ PT PTT ☐ UC ☐ BCx1 ☐ BCx2 ☐ Dilantin ☐ Digoxin ☐ Acetone ☐ Liver prof. | |
| | ☐ CXR (PA) Portable ☐ CXR Pa/Lat ☐ ABDx Flat/Erect ☐ KUB ☐ CT Head w/o Contrast ☐ Beta HCG | |
| | **ORDER SETS** ☐ Chest Pain / CHF Low Risk ☐ Chest Pain / CHF Moderate/High Risk ☐ ABD Pain Female | |
| | ☐ ABD Pain Male ☐ Female/Male STD ☐ Sepsis Adult ☐ Sepsis Child ☐ Respiratory Distress ☐ Meningitis | |
| | ☐ Post Exposure Body Fluid/ Needle Stick ☐ Preg Female/Vaginal Bleed/ABD Pain ☐ Psych/Detox ☐ DKA | |
| | ☐ Overdose ☐ Pre Op Surg Clearance ☐ CVA ☐ Acute CVA ☐ Renal Colic ☐ ETOH Abuse ☐ GI Bleed ☐ Trauma | |
| | PA/DR Signature | |

**TREATMENT ORDERS**

| TIME | ORDER | DR/PA/NP INITIAL | TIME DONE | NURSE INITIAL | RESPONSE TO TREATMENT | PAIN SCALE | TIME |
|------|-------|------------------|-----------|---------------|----------------------|-----------|------|
| | ☐ Tylenol ___ mg ☐ po ☐ pr x 1 dose | | | | | | |
| | ☐ Motrin ___ mg ☐ po x 1 dose | | | | | | |
| | ☐ EKG ☐ monitor ☐ O₂ ___ liters via | | | | | | |
| | C-spine | | 0630 | | | | |
| | Percat + po | | 0650 | | | | |
| | Motrin po, 4 Lio | JM 0130 | | | to SU by MD | | |
| | qb | | to SU by MD | | | | |
| | Percu 4 by po right | by MD | | | | | |
| | Splinted | done | | | | | |

**VITAL SIGNS** (Normal Fingerstick range 70-110)

| TIME | T | P | R | BP | PULSE OX | FS | INITIAL | TIME | T | P | R | BP | PULSE OX | FS | INITIALS |
|------|---|---|---|----|----------|----|----|------|---|---|---|----|----------|----|----|
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

**VITALS AT DC**
TIME 30  T _100_ P _88_ R _25_ PULSE OX

PAIN ASSESSMENT DISCHARGE

No Pain 0 1 2 3 4 5 6 7 8 9 10 Worst Pain

□A □B □C □D

## ST. LUKE'S CORNWALL HOSPITAL

□ CORNWALL CAMPUS
□ NEWBURGH CAMPUS

GRAHAM, CHATIE

POWELL, ALAN

**EMERGENCY CASES CANNOT ALWAYS BE HANDLED ON A FIRST COME FIRST SERVE BASIS. IF YOU HAVE HAD TO WAIT FOR ATTENTION IT IS PROBABLY BECAUSE SOMEONE MORE SERIOUSLY ILL WAS RECEIVING CARE ON THEIR BEHALF. WE THANK YOU FOR YOUR PATIENCE AND COOPERATION.**

### AFTER CARE INSTRUCTION TO THE PATIENT

The treatment that you received from the Emergency Room was an EMERGENCY TREATMENT ONLY. It was directed primarily to the emergent problem. Emergency treatment is not intended to be a substitute for the complete and comprehensive medical care as rendered by your personal doctor. It is difficult to recognize and treat all elements of injury or illness in a single visit. It is also difficult to treat a NON-EMERGENT or CHRONIC condition on an emergent basis in the Emergency Room.

If new symptoms should develop or if your condition becomes worse and you cannot reach your personal doctor, return to SLCH Hospital Emergency Room AT ONCE. Si su tengas sintomas nuevas o si su sintomas Empeoran por favor regrese al sala de emergencia.

Conditions may change in the course of hours and new unforeseeable complications may ensue. In that case, it is essential that you secure a follow-up examination and treatment by arranging an appointment with YOUR OWN DOCTOR. Meanwhile follow the AFTER CARE INSTRUCTIONS INDICATED BELOW; Condiciones pueda cambiarse en pocas horas y complicaciones nuevas pueda ser. Tener estas instrucciones y los instrucciones significa bajo.

| FOR GENERAL MEDICAL FOLLOW-UP CALL | X-RAYS |
|---|---|
| Medical Doctor on Call _____ Phone _____ or | The interpretation of your x-ray as given to you by the Emergency Room Physician is only a preliminary report. The x-ray specialist reviews the x-ray films and if there is a change in the diagnosis, you and/or your personal physician will be notified. Sus radiografias han sido leidas en base leidas en base preliminaria. La leida final sera hecho por un radiologo. Si es necesario usted sera notificado de cualquier cambia. |
| _____ Family Health Center 563-8000 | |
| **COMPENSATION CASES** - Compensation cases are required to obtain follow-up care by a private physician. Call within two (2) days to make an appointment. | |

### MEDITECH INSTRUCTION SHEET:

| | | | |
|---|---|---|---|
| □ BEHAVIOR HEALTH | □ DEPRESSION | □ INSECT BITES | □ STUBBED TOE/FRACTURED TOE |
| □ ABDOMINAL PAIN | □ DERMABOND | □ LACERATION | □ SUNBURN |
| □ ABSCESSES | □ DETOX | □ LOW BACK PAIN | □ THREATENED ABORTION |
| □ ALLERGIC REACTIONS | □ EYE INFECTION | □ LYME DISEASE | □ TIA S |
| □ ALLERGIC BRONCHITIS | □ FEVER | □ NOSEBLEEDS | □ TICK BITE/LYME DISEASE |
| □ ASTHMA | □ GASTRITIS | □ NURSEMAID'S ELBOW | □ TOOTHACHE |
| □ BRONCHITIS (ADULT) | □ GENERAL DC INSTRUCTIONS | □ OTITIS MEDIA | □ URI |
| □ BURNS | □ HAND | □ PALPITATIONS | □ URINE RETENTION/CATHETER |
| □ CAST CARE | □ HEAD INJURY | □ PEDS FEVER MANAGEMENT | □ URTICARIA/HIVES |
| □ CERVICAL PAIN | □ HEADACHES | □ PEDS VOMITING/DIARRHEA | □ UTI |
| □ CHEST PAIN | □ HEARTBURN | □ PHARYNGITIS | □ VERTIGO |
| □ CONSTIPATION | □ HEAT EXHAUSTION | □ POISON IVY/OAK/SUMAC | □ VIRAL SYNDROME (ADULT) |
| □ CORNEAL ABRASION /EYE INJURY | □ HEMATOMA/ECCHYMOSIS | □ RENAL COLIC | □ VOMITING/DIARRHEA |
| | □ HERNIA | □ SHINGLES | □ WOUND CARE (NO SUTURES) |
| □ CROUP | □ HIGH BLOOD PRESSURE | □ SHOULDER DISLOCATION | □ WRIST INJURY |
| □ CRUTCH WALKING | □ HYPERVENTILATION | □ SPRAINS/STRAINS | □ SPANISH VERSION |
| | □ HYPOGLYCEMIA | □ STDS | □ PSYCHIATRIC REFERRAL |

| □ EMPLOYEE, NO WORK FOR □ 1 □ 2 DAYS | |
|---|---|
| Follow up with Specialist Dr. _Hyman_ Phone _561-8000_ | NO WORK FOR _____ DAYS |
| For Dental follow up, FHC Dental 845-569-8142, Dr Bauer 845-565-2140, Dr Goldstein 845-564-9300, Dr Mourad 845-561-3290 | NO SCHOOL FOR _____ DAYS |
| For STD exposure, Orange County DLH 568-5333, Planned Parenthood 562-5748 | NO PHYS ED. FOR _____ DAYS |

Soft collar for comfort
ice pack
Motrin 600 every 6 hr with food
tylenol #3 or percocet 1-2 every 4 hr
if home

_Fu ortho or pvt dr_

| □ The Doctor you have been referred to _____ , may not be covered in your insurance plan and you may be required to pay for the office visit. Since there are many different insurance plans, and not every physician participates in every plan, we advise that you contact your insurance company to verify which physicians are in your plan. |
|---|

| PAIN SCALE AT DIC | No Pain 0 1 2 3 4 5 6 7 8 9 10 Worst Pain | VITAL SIGNS AT DC: T _____ P _____ R _____ BP _____ PO _____ |
|---|---|---|

DIAGNOSTIC IMPRESSION: _Strain cervical_          DISPOSITION@DC □ Stable ☑ Improved

I HAVE RECEIVED AND UNDERSTAND ABOVE INSTRUCTION SHEET/HABER RECIBIDO Y ENTIENDO LAS INSTRUCCIONES:

| PRESCRIPTIONS: | ☑ NO DRIVING WHILE TAKING MEDICATION | |
|---|---|---|
| Motrin 600 96 | PT SIGNATURE _Chatie Graham_ | |
| Percocet 1-2 q4 | | |
| | RN _____ | Time out _0130_ |
| | MD/PA _____ | |

1st copy - Chart    2nd Copy D/C Instruction to Pt.

**DEPARTMENT OF EMERGENCY MEDICINE**

☐ A ☐ B ☐ C ☐ D

PATIENT NAME: *Graham, Charlie*

STREET ADDRESS: *L748584*

*GRAHAM, CHARLIE*
*F    39/13/06*

**ST. LUKE'S CORNWALL HOSPITAL**
☐ CORNWALL CAMPUS
☐ NEWBURGH CAMPUS

SERVICE DATE: *8/25/06*

AGE: *8*    *MOU36 159*

| | CHIEF COMPLAINT | | KEY |
|---|---|---|---|
| | | | Agreed with / Not Commented |

CHIEF COMPLAINT: *that pain*
Time *1235*

| | | | |
|---|---|---|---|
| HPI | [HPI] | *Restrained driver ~1 hr c/o abd pain.* | X |
| 4 | [Quality, severity, time] | *Says thrown against © steering...* | |
| 4 | [Location, Duration, Context] | *Pain radiates... side body able to walk...* | |
| 1-3 | [Assoc. S&S] ☐None | *No head trauma* | |
| 1-3 | [Mod. Factors] ☐None | | |
| 1-3 | | | |

**Review of Symptoms (CIRCLE APPROPRIATE FINDINGS)**

| | |
|---|---|
| ROS | **General:** WNL  Chills  Fever  Malaise  Wt Loss |
| 10+ | **Skin:** Normal  Rash  Sweaty  Itchy  Laceration |
| 2-9 | **Eyes:** WNL  Blurred  Diplopia  Photophobia |
| DRP | **ENT:** WNL  Nosebleeds  Sore  Throat  Rhinitis |
| DRP | **Resp:** WNL  Cough  SOB  Hemoptysis |
| DRP | **Cardiac:** WNL  Chest Pain  Palpitations  Orthopnea  DOE |
| | **GI:** WNL  Abd. Pain  Constipation  Diarrhea  Nausea Vomiting |

**GU:** WND  Dysuria  Frequency  Urgency  Nocturia
**MS:** WNL  Back Pain  Joint Pain  Myalgia  Weakness
**Neuro:** WNL  Seizures  Dizziness  Headache  Weakness
**Psych:** WNL  Anxiety  Depression  Suicide
**Endocrine:** WNL  Thirsty  Polyuria  Head/Cold Intolerance
**Heme:** WNL  Bleeding  Bruising

☐ All other pertinent ROS negative  ☐ See Additional ROS in HPI:

| | |
|---|---|
| PFS | ☐Patient is a Return Visit (within last 72 hours) |
| H | ☑RN Triage Notes Reviewed and Confirmed   ☐Unable to Obtain Hx Secondary to:_____ History from:_____ |
| 2-3 | ☑Medications Reviewed in Nursing Notes   ☐Old Medical Records Reviewed:_____ Date:_____ |
| 1 | ☑Allergies NKDA  ☐Allergies:_____  Tetanus: ☐Up to Date LMP: 8/16/06  GPAL |
| N/A | Past Medical History: ☐Neg  ☐DM  ☐HTN  ☐MI  ☐CAD/Angina  ☐CHF  ☐COPD  ☐Asthma  ☐CVA  ☐Other |
| N/A | Past Surgical History: ☑Negative  ☐Positive_____ |
| N/A | Family History:  ☐No Significant Family History  ☐Heart Disease  ☑DM  ☐Cancer  ☐HTN  ☐Other |
| | Social History: Tobacco: ☐No  ☐Yes  Alcohol: ☐No  ☐Yes  Substance Abuse: ☐No  ☐Yes  ☐Other |

| Vital Signs | Temp. | PULSE | RESP. | BP | Pulse Oximetry | Glucose | Pain Scale |
|---|---|---|---|---|---|---|---|
| | 98.7 | 120 | 20 | 140/85 | 99 | | |

| | |
|---|---|
| **Constitutional:** | ☐Vital Signs Reviewed (See Nurses Notes)  ☑Warm, Dry, Well Nourished  ☑No Distress  ☐Non-Toxic |
| | ☐Other _____  *NCAT* |
| **Eyes:** | ☐Conjunctive WNL  ☐Lids WNL  ☑PERRL  ☐Fundi WNL  ☐No Nasal Discharge |
| **ENT:** | ☑EYM WNL  ☑Throat clear  ☐No exudates  ☐Dentition WNL  ☐No bleeding of gums  ☐NML Fontanello |
| | ☐Other _____ |
| **Neck:** | ☐Supple  ☐No masses  ☑No tenderness  ☑Trachea midline  ☐No JVD  ☐No stridor  ☐Thyroid Normal size and consisten |
| | ☐Other *palp C5-C6* |
| **Chest/Breast:** | ☑Chest symmetrical  ☑No deformities  ☐Non-tender to palpation |
| | ☐No lumps or masses palpated |
| | ☐Other |
| **Respiratory:** | ☑Well-aerated bilaterally  ☑Clear to A/P  ☑No rales  ☐No rhonchi  ☐No wheezes |
| | ☐Other |
| **Cardiovascular** | ☐Good heart tones  ☑RR without ectopy  ☑S1, S2 WNL  ☐No murmurs  ☐No S3/S4  ☐PMI WNL |
| | ☐Pulses: ☐Equal bilaterally and strong in ☐Carotid ☐Femoral ☐Brachial areas ☐Good Distal-Pedal pulses |
| | ☐No bruit  ☐No thrills |
| | ☐Other |
| **Abdominal:** | ☑Flat  ☑Non-tender  ☑Good bowel sounds in all quadrants  ☐No hepato-splenomegaly |
| | ☑No abdominal/inguinal hernia  ☑No masses  ☑No Rebound  ☐No Guarding  ☐No Pulsatile Mass |
| | ☐Rectal:☐No hemorrhoids  ☐Good sphincter tone  ☐No masses  ☐Gualac Negative |
| | ☐Prostate Normal size and consistency  ☐Non-tender |
| | ☐Other |
| **GU (Male):** | ☐Penis: ☐Without lesions  ☐No discharge |
| | ☐Scrotum: ☐Two testicles of normal size  ☐Descended  ☐Non-tender |
| | ☐Other |
| **GU (Female):** | ☐Pelvic: ☐External genitalia WNL  ☐No vaginitis  ☐No D/C  ☐No masses |
| | ☐Cervix: ☐WNL  ☐No CMT  ☐Os closed |
| | ☐Uterus: ☐Non-tender  ☐No masses  ☐Size WNL |
| | ☐Adnexa: ☐No masses  ☐Non-tender |
| | ☐Other |
| **Lymphatic:** | ☑No palpable nodes in ☑Neck  ☐Axillae  ☐Inguinal region |
| | ☐Other |
| **MS Spine / Extremities** | ☑Gait WNL  ☐No Midline Spinal Tenderness  ☐Neck  ☐Thoracic  ☐Lumbar regions  ☐No deformities |
| | ☑Full ROM  ☑Non-tender  ☐No pre-tibial edema  ☐No calf tenderness |
| | ☐Other |
| **Skin:** | ☑Warm and dry  ☑No rashes  ☐WNL color and texture  ☐Non-tender  ☐Skin turgor WNL  ☐Fontanelle Flat  ☐Cap refill WN |
| | ☐Other |
| **Neurologic:** | ☑Awake and aware, CN II-XII intact  ☐No pronator drift  ☑Strength WNL  ☐Sensation WNL |
| | ☐DTR's equal and active  ☐NIH  Stroke Scale _____ |
| | ☐Other |
| **Psychiatric:** | Oriented to: ☑Person  ☑Time  ☑Place  ☑Answers questions appropriately  ☐No suicidal/homicidal thoughts |
| | ☐Judgement WNL  ☐Mood and Affect appropriate  ☐Medically cleared |
| | ☐Other |

| |
|---|
| PE |
| 9-2 |
| 6-2 |
| 6 |
| 1 |
| 1 |

*(handwritten notes in right margin of Abdominal/GU section):*
*© hip tender*
*but FROM*
*Nerv Exam*
*~ no bony*
*tend.*

## MEDICAL DECISION MAKING

**LAB RESULTS:**

UA_____ UCG_____

CK_____ CKMB_____ Trop_____

INR_____

*All Interpretations Performed By ED Clinician Unless Otherwise Noted*

**Radiological Interpretation:**
C-Spine

**Analysis:**
Peak Flows #1 (Pre)_____, #2 (Post)_____, #3 (Post)_____

**EKG Strip:** Rate _____ Rhythm _____

Interpretation _____

ABG Interpretation _____

**EKG:** Rate _____ Rhythm _____ Axis _____

Pulse Ox Interpretation ☑WNL ☐Hypoxia _____

* All Procedures Performed By ED Clinician Unless Otherwise Noted*

**PHYSICIAN PROCEDURES:** ☐I & D ☐FB Removal ☐Foley Cath ☐Intubation ☐RSI ☐Laryngoscopy ☐TPA ☐Conscious Sedation
☐Chest Tube ☐Central Line ☐Diff IV ☐IV push meds ☐Femoral Stick ☐NGT ☐[ABG ☐Nasal Packing ☐Burn Care ☐LP
☐Slit Lamp ☐Fluorescein Stain with Woods Lamp ☐Digital Block ☐Open Thoracotomy ☐Vaginal Delivery
☐Ortho Splint ☐Splint Applied:_____ ☐Shoulder Reduction ☐Finger Reduction ☐Patella ☐Mandibular
☐Other _____

| Wound Repair: | Laceration Length(s) (cms): _____ ☐Curved ☐Angular ☐Stellate | Irrigated: | ☐Yes ☐No |
|---|---|---|---|
| ☐Simple | Location: _____ ☐Layered ☐Linear | Explored: | ☐Yes ☐No |
| ☐Complex | (Explain) _____ | FB Present: | ☐Yes ☐No |
| | Material: _____ # of Sutures: ____ | Removed: | ☐Yes ☐No |
| | Level of Contamination: ☐Clean ☐Minimal ☐Severe | Debrided: | ☐Yes ☐No |
| | ANESTHESIA: | | |

**CRITICAL CARE TIME:** Start _____ End _____

**JUSTIFICATION:**

**Pain Reassessment:**

**DIAGNOSTIC/IMPRESSION:**
1) Strain, cervical      4)
2)                        5)
3)                        6)

| COMMUNICATIONS MD / Consult Called | Time | Recall(s) | Answered / In ED | DISCUSSION: |
|---|---|---|---|---|
| | | | | |
| | | | | |

**Disposition Date:** _____ **Time:** _____ Admit to: ☐Critical Care ☐Gen Med/Surg ☐Peds Unit
Admitting Physician: _____

☑Treat / Release ☐AMA ☐Elopement ☐Left W/O Being Seen       Time ADM. Called _____ Room # _____
☐Transfer  Reason for Transfer: _____
☐Expired ☐Coroner Notified ☐ODN Notified  Ref #_____       Time Bed Assigned _____ PT. to Floor _____

**Condition:** ☐Improved ☐Unchanged ☐Asymptomatic ☐Stable ☐Ambulatory ☐Unstable ☐Guarded

| Follow-Up: | Who: | When: | Patient endorsed to Dr. _____ who accepts responsibility for the further evalation of this patient @ _____ AM / PM Signature: |
|---|---|---|---|
| | Time off: | | |

| Print Name (AHP) | Init | Signature | Print Name (Physician) | Init | Signature |
|---|---|---|---|---|---|
| | | | Mädür | | Mädür |

## ORANGE REGIONAL MEDICAL CENTER

### Report Of Operation

Arden Hill Campus 4 Harriman Drive Goshen New York 10924 (845) 294-2189 x4688
Horton Campus 60 Prospect Avenue Middletown, New York 10940 (845) 342-7568

Patient: GRAHAM, CHATIE
RM#:
Surgeon: JOHN P. HANDAGO, M.D.
ASST:

MR#: 450909
Date:

| | |
|---|---|
| **PREOPERATIVE DIAGNOSIS:** | IMPINGEMENT SYNDROME OF THE LEFT SHOULDER. |
| **POSTOPERATIVE DIAGNOSIS:** | IMPINGEMENT SYNDROME, PARTIAL TEAR OF THE ROTATOR CUFF TENDON, PARTIAL TEAR OF ANTERIOR AND POSTERIOR LABRUM AND BURSITIS. |
| **OPERATION:** | ARTHROSCOPY OF THE LEFT SHOULDER WITH ACROMIOPLASTY AND MODIFIED MUMFORD PROCEDURE. DEBRIDEMENT PARTIAL TEAR OF THE ROTATOR CUFF TENDON. DEBRIDEMENT OF PARTIAL TEARING ANTERIOR AND POSTERIOR LABRUM. PARTIAL BURSECTOMY. |
| **ANESTHESIA:** | GENERAL ENDOTRACHEAL WITH SUPRASCAPULAR BLOCK LEFT SHOULDER |
| **ANESTHESIOLOGIST:** | SHARMA, M.D. |

**PROCEDURE:** The patient was brought to the OR and placed on the OR table in the supine position. A general endotracheal anesthetic was administered The patient was then turned into the right lateral decubitus position with the left shoulder 20 degrees retrograde from the vertical. Under aseptic conditions, a suprascapular block was applied to the left shoulder by Dr. Sharma.

This was followed by DuraPrep and sterile drapes in the appropriate fashion. The left upper extremity was suspended from the arm holding device with 20 degrees forward flexion, 45 degrees abduction, 10 pounds traction. The usual posterior operative portal was created with a #11 blade and the blunt trocar was used to insert the arthroscopic cannula into the glenohumeral joint. There was some mild degenerative changes of the glenoid.

ORANGE REGIONAL MEDICAL CENTER          Report of Operation

Arden Hill Campus 4 Harriman Drive Goshen New York 10924 (845) 294-2189 x4688
Horton Campus 60 Prospect Avenue Middletown, New York 10940 (845) 342-7568

Patient.GRAHAM, CHATIE                    MR#:  450909
Room:                                     Date:
Surgeon: JOHN P. HANDAGO, M.D.
ASST:

Page: 2

There was a partial tearing of the anterior portion of the rotator cuff tendon.
There was partial tearing of the anterior and posterior labrum.  At this point, the
anterior operative portal was created in the usual fashion by advancing the scope
into the triangle formed by the leading edge of subscapularis tendon and the
biceps tendon.

When the Wissinger rod was prominent in the skin superior and lateral to the
coracoid process, the skin was incised and a 7 mm operative cannula was
inserted retrograde into the glenohumeral joint.  The labrum was palpated with
the probe, found to be intact anteriorly and posteriorly.  There was a small tear
anteriorly of the rotator cuff tendon.

The motorized shaving device was then inserted and the tear, anterior and
posterior of the labrum, was debrided and the partial tear of the rotator cuff
tendon was then debrided.  Attention was then directed to the subacromial space
where the scope was repositioned with the blunt trocar.  The lateral operative
portal was created with a #11 blade, approximately 2 cm inferior to the lateral
edge of the acromion.

The 8 mm operative cannula was inserted into the subacromial space with the
blunt trocar  The ArthroCare motorized shaving device was then used to remove
inflamed bursal tissue.  This brought into view the acromion and this was then
cleared of soft tissue with the ArthroCare as well as the lateral and inferior aspect
of the clavicle.

The acromioclavicular soft tissues were also debrided.  The acromionizer was
then inserted and the acromion was resected from medial to lateral and anterior
to posterior in a butcher block fashion.  The lateral inferior aspect of the clavicle
was also debrided.  The motorized shaving device was then inserted and
additional inflamed bursal tissue was debrided from the acromial aspect of the
rotator cuff tendon.

There is no overt partial or full thickness tear  The acromial surface was devoid
of any tear as opposed to the glenohumeral aspect of the rotator cuff tendon.  At
this point, bleeders were coagulated and a copious irrigation was performed.  No
additional pathology was identified.  The inflow was turned off and the
instruments were withdrawn.

May 10 07 01:05p

**ORANGE REGIONAL MEDICAL CENTER**          **Report of Operation**

Arden Hill Campus 4 Harriman Drive Goshen New York 10924 (845) 294-2189 x4688
Horton Campus 60 Prospect Avenue Middletown, New York 10940 (845) 342-7568

Patient:GRAHAM, CHATIE                       MR#:  450909
Room:                                         Date:
Surgeon: JOHN P. HANDAGO, M.D.
ASST:

Page: 3

Wound closure was performed with 3-0 Polysorb in a simple mattress fashion.
20 cc of 0.25% Marcaine plain were injected into the subacromial space.  Sterile
dressings were applied.  The patient was then awakened from her general
endotracheal anesthetic.  She was transferred to the recovery room stretcher and
transported to the Recovery Room where she was seen in satisfactory condition.
Estimated blood loss for the procedure was negligible.

Dictated by:  JOHN P. HANDAGO, M.D.

                                          JOHN P. HANDAGO, M.D.

Job: 276572
DD: 03/28/2007
DT: 03/29/2007
PMC/LB

06/29/2007  11:33    0    - - -    PAGE  08
☑001/001

# HUDSON VALLEY IMAGING

## affiliated with 🌸 St. Luke's Cornwall Hospital

575 Hudson Valley Ave New Windsor, NY 12553. Tel (845) 220-2222. Fax (845) 220 - 2211

|  |  |
|---|---|
| RE: | GRAHAM, CHATIE |
| DOB: | 1964/09/02 |
| DOE: | 2007/02/07 |
| ENCOUNTER#: | 89339 |
| READING DOCTOR: | MARTINEZ, HILARIO, M.D. |
| REFERRING / ORDERING DOCTOR: | POLEPALLE, SUNITHA, M.D. |

DESCRIPTION: MRI OF THE CERVICAL SPINE

INDICATION: Neck pain with left paresthesias.

TECHNIQUE: Multiple sagittal T1 and T2, and axis GRE-weighted images were obtained.

FINDINGS: The sagittal images demonstrate straightening of the cervical lordosis. The vertebral body height and signal within the bone marrow are within normal limits.

Evaluation of the cervical discs demonstrates a mild broad based posterior disc bulge at C4-5, C5-6 and C6-7 causing flattening of the ventral dural sac without spinal stenosis. There is mild uncovertebral joint hypertrophy predominantly involving the left C4-5 and C5-6 uncovertebral joints causing stenosis of the left C4 and C5 foramina. Facet joints are intact. The cervicomedullary region appears normal. The cervical spinal cord demonstrates a normal caliber and signal intensity.

The atlantoaxial joint relationship, odontoid process, prevertebral soft tissues, cranioverterbral junction and occipital condyles are normal.

IMPRESSION:
1. There is a mild broad based posterior disc bulge at C4, C5-6 and C6-7 causing flattening of the ventral dural space. No spinal stenosis is identified.
2. Normal cervical cord.
3. Mild uncovertebral joint hypertrophy as described causing mild stenosis of the left C4 and C5 foramina.

Hilario Martinez, M D , Radiologist
D: 2/7/07 T: 2/8/07 cw

06/29/2007  11:00   0

# Physical Therapy    Initial-Evaluation

---

Patient Name _CHARLIE GRAHAM (CHATIE GRAHAM)_ Age _42_ Date _9-22-06_
Diagnosis _CS/LS RADICULOPATHY_    Doctor _DR. DOLETALLE_
Precaution _HTN_
Area to be treated

( ) C-Spine        ( ) T-Spine        ( ) L-Spine        ( ) S-Spine
Shoulder R/L    Arm R/L    Elbow R/L    Forearm R/L    Wrist R/L    Hand R/L
Hip R/L    Thigh R/L    Knee R/L    Leg    R/L    Ankle R/L    Foot R/L

_Pt. involved in an MVA 8-25-06. Pt's car was rearended
hitting her (L) sh. area against driver's side door. X-ray_
_@ St. Lukes were (-). Currently c/o severe neck pain (L)_    10 Excruciating Pain
Sh. pain and _4/6_ No pain
_Pt. Hx. (R) car surgery (R), HTN_

1   2   3   4   5   6   7   (8)   9   10

Objective  ~~ENDOMORPH~~, (+) _impingement test (L Sh., (-)_
_Spurlings, (-) approx. (-) SLUMP_
_(+) Patricks (L)_ ,

☑ Muscle Spasm        ☐ Edema        ☐ Sensation _numbness_
☑ Muscle Tenderness    ☐ Atrophy        ☐ Contracture

ROM _(S flex/ext 20° LE 22° rot (L)44°(R)30°. (L) Sh. flex 100 at 40°_
MMT _(S grossly gr. 3+/5, (L) sh. 3/5, Abd/LS ext 3/5 Mod +_

Assessment _Pt. MVA pain/radiculopathy. Affects mostly self-care, including hair_
_care, and putting her bra on. Reaching up very difficult d/t shooting_
_pain. Has trouble sitting and st. for long periods > 10 mins. Good for_
_rehab?_

STG - 2 to 4 weeks                    LTG - 4 to 6 weeks

Goals  ☐ (1) Reduce pain by 50%        ☐ (1) Manage numbness/paresthesia
       ☐ (2) Use (L) sh. 90° for        ☐ S/-
       ☐ self-care 5/10X              ☐ LTG (1) Reduce WNL for
       ☐ (3) Stand/st. > 15-20 mins.    ☐ functioning pre-injury status
                                        ☐ (2) RTW full duty 8hrs/d
                                        _(day)_

Plan  _Pt. 2-3X/WK_

Treatments  ☑ Hot Pack    ☑ UBE/LBE    ☑ ROM Ex.      ☑ NMR         ☑ Stationary Bike
            ☑ Cold Pack   ☐ Treadmill  ☑ Stretching   ☑ MFR         ☐ Mckenzie Ex.
            ☑ E-stim      ☑ PR Series  ☐ Gait Training ☐ HEP        ☐ William's Flx/ext
            ☑ Ultrasound  ☐ Total Gym  ☐ Balance Ex.  ☐ JT MOB     ☑ Proper Body Mech

_Andre Bassig, RPT_                    _Richard V. Escano, RPT_
_022509-1_                              _027887-1_

06/29/2007  11:00    0                                                         PAGE  10



## MID HUDSON PAIN MANAGEMENT & PHYSICAL THERAPY
### SUNITHA POLEPALLE, M.D.
Board Certified in Physical Medicine & Rehabilitation

*ELECTRODIAGNOSTIC MEDICINE (EMG/NCV)*
*NECK & BACK PAIN AND SPORTS & WORK INJURIES*
*CARPAL TUNNEL SYNDROME*

110 CRYSTAL RUN RD
MIDDLETOWN, NY 10940
TEL: (845) 692-4270
FAX: (845) 692-5014

3078 RT 9W, STE 200
NEW WINDSOR, NY 12553
TEL: (845) 565-5943
FAX: (845) 565-5944

---

## THERAPY PRESCRIPTION

PATIENT: *Chatie Graham*                                    D.O.B. 9/2/06

DATE: 9/2/06                                    P.T. _____  O.T. _____

**Diagnosis:**

[✓] Myofascial Pain                          [✓] Facet Dysfunction
[✓] Rotator Cuff Tendinitis                  [ ] Carpal Tunnel Syndrome
[✓] Cervical Radiculopathy                   [ ] Sacroiliac Dysfunction
[✓] Lumbar Radiculopathy                     [ ]

**Precautions:**

[ ]   Avoid Back Flexion
[ ]   Avoid Back Extension

**Therapy:**

[ ] Iontophoresis                    [ ] Phonophoresis
[ ] HEP                              [ ] Pelvic Stabilization
[ ] US _____                     [ ] Lumbar Stabilization
[ ] Superficial Heat                [ ] Back School
[ ] Ice                             [ ] Instructions on Proper Body Mechanics
[ ] ROM Exercises                   [ ] Work Hardening
[ ] Strengthening Exercises         [ ] Myofascial Release
[ ] Deep Friction Massage           [ ]

**Duration:**  2-3 x per week for _16_ weeks.

_____
Sunitha Polepalle, M.D.

SP:rh
090801

06/29/2007  11:00    0                                                    PAGE  14

 

# Physical Therapy    Re-Evaluation

Patient Name _Chadie Ershan_                    Date _1-16-07_
Diagnosis S/P ① _shldr acromioplasty_          Doctor _John P. Hardaga_
Precaution _none_

Subjective _Pt c̄o mod pain on ① shldr. S/P_
_① shldr acromioplasty on 3-21-07._

Objective _abt morph, ⊕ tenderness, ⊕ Apley's scratch on_
_IE/ER, abd/add._

AROM _fwd √ = 0-170°,  abd = 0-170°,_
_IE and E/R is limited r̄ pain_

MMT _gross ms grade is 3/5_

Assessment _S/P ① shldr acromioplasty._
_Pain limits fROM on IE/ER abd/add._

Goals        STG

☐ _Reduce pain 30%._          ☐ _ROM on upper clothes puttle_
☐ _Eliminate ms tenderness_   ☐ _STG_
☐ _Regain fROM 100%._         ☐ _Reduce pain 30%_
☐ _improve ms grade 1/2_      ☐ _Establish daily HEP_
                              ☐ _Perform all ADL painfree_

Plan _PT 2-3X/wk  x  4 wk_

TX  ☑ HLC Pack     ☑ Strengthening     ☐ BAPS Board      ☐ Gait Training
    ☑ Tens/ES      ☐ Scap Stabilization ☑ Stationary Bike ☐ William's Flx/ext
    ☐ US           ☐ NMR                ☐ Total Gym       ☐ McKenzie Ex
    ☑ ROM Ex       ☐ Joint Mob          ☑ Overhead Pulley ☐ Proper Body Mech
    ☑ Stretching   ☐ C-Traction         ☐ Treadmill       ☑ HEP
    ☐ Massage

                                                              , RPT

_Andre Bassig, RPT_          _Richard V. Escand, RPT_    _Gesell Arbozo, RPT_
_022500 1_                   _027887 1_                  _028141 1_

**Pain Relief Center**
52 - 54 Dolson Ave
Middletown, N.Y. 10940
Office: (845) 342-0000
Fax: (845) 342-2739

— DISABILITY CERTIFICATE —

DATE: _6/7/06_

This is to certify that my patient, _Chetu Gallte_

Has been under my professional care and is/was totally

incapacitated from _Sept 1_ through _Oct 1_

Remarks: _____

_____

Diagnosis: _Acute Hand Cervical Pain_

_____

Prognosis: _Guard_

_____

**Pain Relief Center**
52 - 54 Dolson Ave
Middletown, N.Y. 10940
Office: (845) 342-0000
Fax: (845) 342-2739

## DISABILITY CERTIFICATE

DATE: 9/29/06

This is to certify that my patient, Chrtze GrAhAn

Has been under my professional care and is/was totally

incapacitated from 8/28/06 through 10/9/06

Remarks: NO work -

Diagnosis: Neck - LB - SH PAIn

Prognosis: Good



# MIDDLETOWN PHYSICAL MEDICINE & REHABILITATION, P.C.

54 Dolson Avenue   Suite 300   Middletown, NY 10940   Tel: (845) 343-0292   Fax: (845) 342-2739

## INITIAL PHYSICAL MEDICINE EVALUATION

**PATIENT:**                          Chatie Graham
**DATE OF EXAM:**                     August 31, 2006
**DATE OF ACCIDENT:**                 August 26, 2006

### HISTORY OF PRESENT CONDITION:
Ms. Chatie Graham is a 41-year-old right-handed female who states that she was
involved in a motor vehicle accident as a restrained driver who was rear-ended on
8/26/06. She denies head trauma or loss of consciousness sustained in the course of the
accident. During the impact, she hit her left shoulder forcefully against the driver's side
door. Following the accident, she was brought by ambulance to St. Luke's Hospital.
There she received x-rays of the cervical spine and the left shoulder and was then
released. As her symptoms persist, she now comes under my care.

### CURRENT COMPLAINTS:
The patient is presently complaining of severe neck pain and left shoulder pain, and
markedly diminished mobility. She also complains of swelling of the left parascapular
muscles. Neck pain radiates down the left upper extremity to the mid-arm and also into
the left chest wall. In addition, she experiences numbness in her left hand. She complains
of mid-back pain and she also complains of low back pain radiating down the left lower
extremity to her calf associated with numbness.

She denies nausea, vomiting, dizziness, loss of visual acuity, or bowel or bladder
difficulties.

### PAST MEDICAL HISTORY:
She fell down the stairs in 1998 injuring her right knee and sustaining a ligament tear,
which required a surgical repair
Hypertension

### MEDICATIONS:
Anti-hypertensive medications
Ibuprofen 600 mg q6h
Flexeril 10 mg tid

### ALLERGIES:
No known drug allergies

### SOCIAL HISTORY:
Denies the use of tobacco or excessive alcohol.

_____ Miriam F. Kanter, M D , P M.R    Board Certified Physiatrist _____

06/29/2007  11:00   0

**Patient:** Chatie Graham     – 2 –     **Date:** August 30, 2006

## OCCUPATIONAL HISTORY:
She works as a computer technician and has been unable to return to work since the accident occurred.

## PHYSICAL EXAMINATION:
Well-nourished female who ambulates with an antalgic gait featuring a guarded posture. Cervical spine examination reveals severe tenderness to palpation and myospasms of the right-sided cervical spinal muscles. There is an effusion in the right parascapular area. There are trigger points in the thoracic paraspinal muscles. Cervical spine range of motion study shows forward flexion to 5/50°, extension to 2/60°, left rotation to 3/80°, right rotation to 0/80°, left and right lateral flexion to 5/45° bilaterally. Cervical compression test is positive for pain radiating to the right shoulder. Cervical distraction is negative.

Left shoulder examination reveals an effusion about the shoulder. Shoulder range of motion study shows forward flexion to 60/180°, abduction to 90/180° and internal and external rotation to 30/90°. There is weakness of the rotator cuff musculature rated at 4-/5. Impingement and Drop Arm tests are positive.

Lumbar spine examination reveals tenderness to palpation and myospasms of the lumbar paraspinal muscles bilaterally. Lumbar spine range of motion study shows forward flexion to 70/90°, extension to 20/30°, lateral flexion and rotation to 20/30° bilaterally. Nachlas sign is positive bilaterally, Straight Leg Raising sign is negative.

## NEUROLOGICAL EXAMINATION:
Sensation is intact in the bilateral lower extremities. Strength is diminished for the left shoulder including the rotator cuff and deltoid muscles and is otherwise intact. Deep tendon reflexes are normoactive and symmetric throughout.

## DIAGNOSTIC IMPRESSION:
1. Cervical radiculitis
2. Lumbar radiculitis
3. Left shoulder derangement
4. Thoracic myofasciitis

## DISCUSSION/PLAN:
1. Physical therapy two to three times a week consisting of stretching and strengthening exercises, heat pack, cold pack, ultrasound and TENS, therapeutic massage and myofascial release and gentle spine mobilization and traction.

06/29/2007  11:00   0

**Patient:** Chatie Graham                    -3 --                    **Date:** August 31, 2006

2. Home exercise program.
3. I have prescribed a shoulder sling in order to immobilize the left arm. The patient is wearing a soft cervical collar, which she will continue.
4. I have recommended icing the neck at regular intervals, 20 minutes on followed by 20 minutes off.
5. Trigger point injections today (see Trigger Point sheet).
6. A follow-up physiatric evaluation is recommend within four weeks.


**MIRIAM KANTER, M.D.**
Board Certified, Physical Medicine & Rehabilitation

MK:ml



# MIDDLETOWN PHYSICAL MEDICINE & REHABILITATION, P.C.

54 Dolson Avenue   Suite 300   Middletown, NY 10940   Tel: (845) 343-0292   Fax: (845) 342-2739

## FOLLOW UP PHYSICAL MEDICINE EVALUATION

**PATIENT:**                    Graham Chatie
**DATE OF EXAM:**               October 9, 2006
**DATE OF ACCIDENT:**           August 26, 2006

**HISTORY OF PRESENT CONDITION:**
Ms. Chatie Graham is a 41-year-old right-handed female who was involved in a motor
vehicle accident as a restrained driver on 8/26/06. Since the accident occurred, she has
complained of neck pain radiating down the left upper extremity to her wrist. She also
complains of low back pain, which radiates down the left lower extremity to her ankle.

**MEDICATIONS:**
Ibuprofen 600 mg tid

**PHYSICAL EXAMINATION:**
Well-nourished female who ambulates with an antalgic gait featuring a guarded posture.
Lumbar spine examination reveals tenderness to palpation and myospasms of the
paraspinal musculature. Cervical and lumbar spine range of motion are diminished.
Cervical distraction test is negative while cervical compression test is positive. Nachlas
sign is positive bilaterally. Straight Leg Raising sign is negative.

**NEUROLOGICAL EXAMINATION:**
Sensation is intact in the bilateral upper and lower extremities. There is weakness rated at
4/5 for the left deltoid, biceps and triceps. Strength is otherwise intact. Deep tendon
reflexes are normoactive and symmetric throughout.

**DIAGNOSTIC IMPRESSION:**
1. Cervical radiculitis
2. Lumbar radiculitis

**DISCUSSION/PLAN:**
1. Physical therapy two to three times a week consisting of stretching and strengthening
   exercises, heat pack, cold pack, ultrasound and TENS, therapeutic massage and
   myofascial release and gentle spine mobilization and traction.
2. Home exercise program.
3. I am scheduling the patient for EMG/NCV evaluation of the upper extremities to
   evaluate for a radiculopathy. There is strong clinical evidence to suggest the presence
   of a left sided cervical radiculopathy which has not improved or resolved with
   conventional therapeutic measures to date. The patient may be a candidate for

_____ Miriam E. Kanter, M.D., P.M.R.   Board Certified Physiatrist _____

**Patient:** Chatie Graham                    -2 -                    **Date:** October 9, 2006

cervical epidural injections dependent upon the results of these electro-diagnostic studies.

4. The patient saw a neurosurgeon, Dr. Fraser who also recommended EMG/NCV studies of the upper extremities.

5. A follow-up physiatric evaluation is recommended within three weeks.

**MIRIAM KANTER, M.D.**
Board Certified, Physical Medicine & Rehabilitation

MK:ml